UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAGDELENA HERRING,
o.b.o. J.H., a Minor,

       Plaintiff,                                  Hon. Robert J. Jonker

v.                                                       Case No. 1:14 CV 181

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff's son is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff's son is not disabled within the meaning of the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff's son, J.H., was born on July 24, 2005. (Tr. 152). On April 27, 2012, Plaintiff submitted an application for disability benefits, asserting that J.H. has been disabled since December 1, 2008, due to epilepsy and learning disabilities. (Tr. 152-57, 162). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 91-141). On August 8, 2012, Plaintiff appeared before ALJ Janet Alaga-Gadigian, with testimony being offered by Plaintiff and J.H. (Tr. 53-90). In a written decision dated October 2, 2012, the ALJ determined that J.H. was not disabled as defined by the Act. (Tr. 33-48). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 7-12). Plaintiff initiated this appeal pursuant to 42 U.S.C. § 405(g). Plaintiff recently alleged that her son was awarded benefits on a subsequent application. (Dkt. #19).

## ANALYSIS OF THE ALJ'S DECISION

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from the following severe impairments: (1) speech and language delays; (2) attention deficit hyperactivity disorder (ADHD); (3) borderline intellectual functioning; and (4) seizure disorder/epilepsy. (Tr. 36). At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not, individually or in combination, meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 36-38). The ALJ further determined that Plaintiff's impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (Tr. 38-48).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's

4

impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

    (i)    acquiring and using information,
    (ii)    attending and completing tasks,
    (iii)    interacting and relating with others,
    (iv)    moving about and manipulating objects,
    (v)    caring for yourself, and
    (vi)    health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that Plaintiff experienced less than marked limitations in all six domains of functioning. (Tr. 40-48). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

I.    **Section 112.05 of the Listing of Impairments**[1]

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. The burden rests with Plaintiff to establish that he satisfies a the requirements of a listed impairment. *See, e.g., Zeiger v. Colvin*, 2014 WL 4421395 at *11 (N.D. Ohio, Sept. 8, 2014) (citations omitted).

Section 112.05 of the Listing concerns Mental Retardation in children under the age of 18. To be found disabled pursuant to Section 112.05 a claimant must suffer from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R., Part

---

[1] In the heading to this particular argument, Plaintiff refers to Section 112.02 (Organic Mental Disorders) of the Listing, but in the body of his argument, Plaintiff argues (and cites to) Section 112.05 (Mental Retardation) of the Listing. (Dkt. #15 at Page ID#534-37). The Court, therefore, interprets Plaintiff's argument as asserting that the ALJ erred by not finding that her son satisfied the requirements of Section 112.05 of the Listing of Impairments.

404, Subpart P, Appendix 1, Section 112.05. Pursuant to Section 112.05, a child is considered disabled if one of the following criteria are satisfied:

> A. For children (age 3 to attainment of 18), a condition which satisfies at least two of the appropriate age-group criteria in paragraph (B)(2) of Section 112.02;[2]
>
> OR
>
> B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR

---

[2] The criteria contained in Paragraph (B)(2) of Section 112.02 is as follows:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
>
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
> d. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.

      D.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional significant limitation of function;

OR

      E.      A valid verbal, performance, or full scale IQ of 60 through 70 and:

            2.      For children (age 3 to attainment of age 18), a condition satisfying paragraph (B)(2)(b), (B)(2)(c), or (B)(2)(d) of Section 112.02;

OR

      F.      For children (age 3 to attainment of age 18), a condition satisfying Section 112.02(B)(2)(a), and a physical or other mental impairment imposing additional and significant limitations of function.

20 C.F.R., Part 404, Subpart P, Appendix 1, Section 112.05.

Plaintiff argues that her son's condition satisfies Section 112.05(D). On May 6, 2010, J.H. participated in cognitive testing, the results of which indicated that he possessed a verbal IQ of 70, a performance IQ of 82, a processing speed IQ of 83, and a full-scale IQ of 80. (Tr. 280). The examiner further concluded, however, that "it is believed that the current testing is likely an underestimate of his current intellectual capability." (Tr. 280).

As the language quoted above makes clear, to satisfy Section 112.05(D) J.H. must produce evidence of *valid* IQ scores of 60 through 70. In light of the examiner's comment that J.H.'s IQ scores likely underestimated his intellectual capability, the ALJ concluded that the IQ score on which Plaintiff's argument rests is not valid. (Tr. 36-37). While J.H.'s verbal IQ was rated as 70, his other IQ scores ranged from 80-83. While Plaintiff may be correct that the ALJ *could* have found the IQ results in question valid and, thus, satisfied, Section 112.05(D), the ALJ's contrary determination is supported by substantial evidence. *See, e.g., Doyle ex rel. M.H. v. Astrue*, 2011 WL

1706956 at *8-9 (D.S.C., May 5, 2011) (in context of a claim that child satisfied Section 112.05(D) of the Listings, substantial evidence supported ALJ's decision to reject a single IQ sub-test score of 70 where the results of the remaining sub-tests ranged from 75-80).

This is not to suggest that J.H. does not experience significant cognitive limitations, only that the ALJ's decision that J.H. does not satisfy this particular section of the Listings is supported by substantial evidence. The burden rests with Plaintiff to demonstrate that her son satisfies the requirements of a listed impairment. Because Plaintiff has not met her burden, this argument is rejected.

**II.      The ALJ's Assessment of J.H.'s Functioning**

As noted above, to determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must assess the child's functioning in the following domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. The regulations articulate "age group descriptors" which attempt to identify the skills and proficiencies which children should attain by certain ages. The ALJ assessed J.H.'s claim pursuant to two separate age groups: (a) preschool (age 3 to attainment of age 6) and (b) school-age (age 6 to attainment of age 12).

To be considered disabled, the child's impairments must result in "marked" limitations[3] in two domains of functioning or an "extreme" limitation[4] in one domain. 20 C.F.R. §

---

[3] A "marked" limitation is defined as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A claimant's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities."

416.926a(a). The ALJ found that J.H. experienced less than marked limitations in all six domains of functioning. Plaintiff argues that she is entitled to relief because her son suffers from marked limitations in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) caring for yourself; and (4) health and physical well-being.[5]

      A.      Acquiring and Using Information

The domain of acquiring and using information refers to how well the child acquires or learns information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). With respect the skills a child should possess in this particular domain, the regulations provide as follows:

> (iii) Preschool children (age 3 to attainment of age 6). When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

---

A marked limitation "is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

[4] An "extreme" limitation is defined as one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

[5] Again, the content of Plaintiff's argument differs from the heading associated with such. In the heading to this argument, Plaintiff states that "the ALJ failed to find that Plaintiff had marked limitations in her ability to move and manipulate objects." (Dkt. #15 at Page ID#537). In her subsequent argument, however, Plaintiff asserts that the ALJ improperly assessed her son's abilities in four domains of functioning. (Dkt. #15 at Page ID#537-39). The Court has interpreted Plaintiff's argument as asserting the arguments advanced in the body of her argument rather than the heading preceding such.

> (iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. §§ 416.926a(g)(2)(iii)-(iv).

      B.    Attending and Completing Tasks

The domain of attending and completing tasks refers to "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). With respect the skills a child should possess in this particular domain, the regulations provide as follows:

> (iii) Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.

> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. §§ 416.926a(h)(2)(iii)-(iv).

      C.      Caring for Yourself

The domain of caring for yourself considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). Regarding this domain, the regulations provide as follows:

> (iii) Preschool children (age 3 to attainment of age 6). You should want to take care of many of your physical needs by yourself (e.g., putting on your shoes, getting a snack), and also want to try doing some things that you cannot do fully (e.g., tying your shoes, climbing on a chair to reach something up high, taking a bath). Early in this age range, it may be easy for you to agree to do what your caregiver asks. Later, that may be difficult for you because you want to do things your way or not at all. These changes usually mean that you are more confident about your ideas and what you are able to do. You should also begin to understand how to control behaviors that are not good for you (e.g., crossing the street without an adult).

> (iv) School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

20 C.F.R. §§ 416.926a(k)(2)(iii)-(iv).

### D. Health and Physical Well-Being

This domain considers the "cumulative physical effects of physical or mental impairments" a child may be experiencing. 20 C.F.R. § 416.926a(l). When a child's physical impairment(s), mental impairment(s), or combination thereof "has physical effects that cause "extreme" limitation in [his] functioning, [he] will generally have an impairment(s) that "meets" or "medically equals" a listing." 20 C.F.R. § 416.926a(l). This particular section further provides as follows:

> (4) Examples of limitations in health and physical well-being. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide

>   whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>
>> (i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).
>>
>> (ii) You have somatic complaints related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).
>>
>> (iii) You have limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments).
>>
>> (iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.
>>
>> (v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. §§ 416.926a(l)(4)(i)-(v).

A review of the evidence reveals that the ALJ's assessment concerning these areas of functioning is not supported by substantial evidence. On July 14, 2009, J.H. participated in an EEG examination the results of which were "abnormal. . .due to the presence of generalized epileptiform discharges." (Tr. 265). The results of an October 19, 2009 EEG examination were "highly suggestive of ongoing seizures." (Tr. 262).

On May 6, 2010, J.H. participated in a consultive examination conducted by Wayne Kinzie, Ph.D. (Tr. 279-86). Kinzie observed that J.H. "had some difficulty in comprehending

13

directions" as well as "significant problems in his communication skills, primarily with expressive skills." (Tr. 279). Kinzie estimated that "he could understand probably no more than fifty percent" of what J.H. said. (Tr. 279). Cognitive testing revealed that J.H. experienced "limitations in most of the areas of measurement." (Tr. 280).

On May 21, 2010, J.H. participated in speech and language testing the results of which revealed the following: (1) J.H.'s auditory comprehension ability ranked in the tenth percentile; (2) J.H.'s expressive communication ability ranked in the fourth percentile; (3) J.H.'s total language ability ranked in the fifth percentile; (4) J.H.'s word level articulation ability ranked "below the 2-percentile for age level"; and (5) J.H.'s attention/concentration were "below age-level expectations." (Tr. 287-91).

Testing conducted February 17, 2012, revealed that J.H.'s "verbal skills fell significantly below the average range at only the 4th percentile." (Tr. 333). Testing revealed J.H.'s reading, writing, and math skills ranged from the third to the sixth percentile. (Tr. 335). The examiner concluded that J.H. "scored significantly below average in all of the academic areas tested" and was "functioning significantly below average in reading decoding, math skill development and in the area of written expression." (Tr. 336). Speech and language testing, conducted February 21, 2012, revealed that J.H. "struggles with both expressive and receptive language." (Tr. 405-06). Specifically, it was noted that while J.H. was a first grade student, he possessed the language skills of a two-year old. (Tr. 405). Testing also revealed that J.H. was experiencing significant visual perception issues for which occupational therapy was recommended. (Tr. 337-39).

The ALJ conceded that J.H. "had difficulties in learning when he attended Dickenson Elementary School," but asserted that "when [J.H.] transferred to a charter school, he demonstrated

14

a significantly improved ability to acquire and use information." (Tr. 41). A review of the evidence, however, suggests that J.H.'s performance and advancement were not nearly as significant as the ALJ suggests. Instead, the evidence reveals that J.H. has, throughout the relevant time period, consistently functioned and performed at significantly impaired level. In sum, the ALJ concluded that J.H. experienced less than marked limitations in the aforementioned domains. With respect to the domains of (a) caring for yourself and (b) health and physical well-being, this determination is supported by substantial evidence. With respect to the domains of (a) attending and completing tasks and (b) acquiring and using information, the ALJ's determination, for the reasons articulated above, is not supported by substantial evidence.

**III.        Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, J.H. can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

The record fails to establish that Plaintiff is entitled, at this juncture, to an award of benefits. There does not exist overwhelming evidence that Plaintiff is disabled. Moreover, while there exists evidence that Plaintiff is more limited than recognized by the ALJ, the record contains evidence supporting the contrary conclusion. Simply put, evaluation of Plaintiff's claim requires the

resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the undersigned recommends that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  March 11, 2015          /s/ Ellen S. Carmody
                               ELLEN S. CARMODY
                               United States Magistrate Judge